Thank you very much. Our last case today is Acceptance Insurance. Mr. Weiner. Good morning. The jurisdictional provisions of the Federal Crop Insurance Act don't seem to draw the same crowd as some of the other issues. It's just as important to us. Please proceed. This case involves the intersection of the Court of Federal Claims jurisdiction under the Tucker Act under 28 U.S.C. section 1491 and Federal District Court jurisdiction under the jurisdictional provisions of the Federal Crop Insurance Act 7 U.S.C. 1506 D. Can you help me identify the taking here? If you're to get back to the Court of Federal Claims, there's got to be a taking, right? Yes, Your Honor. What's the taking? The taking here, the acceptance asserts a Fifth Amendment takings claim based on the government's action in preventing acceptance from selling its enforced crop insurance business and other insurance-related assets, and thereby obtaining value for its assets, including the payment of at least $21.5 million in cash. I'm going to need you to help me a little more specifically. They've got insurance, right, that says if the price of corn drops below a certain point, the insurer will make up the difference so that the farmer has some incentive to plant in the first place. Am I getting that right? Yes, sir. Okay, so you've got insurance based on the market. And they pay dividends, the farmers pay certain dividends to get this insurance, right? They pay premiums, yes. Premiums, okay. And now, excuse me, wrong term, but now help me. Where's the taking? When acceptance wanted to sell its enforced insurance policies to rain and hail. Rain and hail was then going to receive the premiums. That's what they were buying, right? It's the right to receive these premiums. They were going to receive the policies and the going forward liabilities associated with those policies, as well as any premiums that would result from renewals of those premiums. And the government's insuring all of this behind, right? There is a federal reinsurance through a standard reinsurance agreement issued by the Federal Crop Insurance Corporation and its parent entity, the Risk Management Agency. Okay, now take me to the taking. The rain and hail and acceptance entered into a letter of intent, albeit a non-binding letter of intent, whereby rain and hail would purchase acceptances, enforced insurance policies, and other insurance assets for a floor of $21.5 million and a ceiling of approximately $70 million. Rain and hail sought approval by the agency for that transaction, and the agency came back and said, we will not approve this transaction. The policies that rain and hail was then willing, at that point, had been willing to pay a minimum of $21.5 million were ultimately provided to or allowed to go to rain and hail free of charge, as well as other acceptances competitors, as a consequence of the Risk Management Agency, the administrator of the Risk Management Agency, Ross Davidson, saying that he would not authorize or approve the requested transaction. So at the end of the day, the government, we believe, was motivated by a public purpose. The record is scant in terms of— In your complaint, at paragraph 16, you say that Mr. Davidson, in explaining why the RMA rejected the transaction, announced that the transaction would be detrimental, and isn't this your taking claim, to the interest of farmers and taxpayers, and therefore had been rejected, and you go on to talk more about this. It's the regulatory action. Yes. All right. And the sale is part and parcel, possibly, of your proof? That's correct. Now, I think the question for me is, if the regulatory action is the taking, what is the discretion factor that takes it outside of a contract action? Because acceptance is not alleging that there was a breach of the underlying reinsurance contract. It's the regulatory action of denying the sale, the hypothecation of the property, saying you cannot sell your property from party A to party B. It is the barring of the free exchange— But isn't that just a discretionary decision, as opposed to, for instance, if it was a land transaction, the actual condemnation by regulation in that you render it useless? It may be, but at its core it's not a breach of contract action. It's not a breach of contract action that acceptance has, where they say you, the FCIC, breached the underlying contract of reinsurance, the SRA, between the entities, to the extent that the government argues that the breach occurred in refusing to waive certain provisions. Acceptance never requested that. Did the regulatory action take the company, or did it take the proposed sale? It took the proposed sale. The result of refusing to allow the transaction to go forward was the company was ultimately put into regulatory supervision, rehabilitation supervision, and ultimately liquidation. But the proposed—they did not take the company per se. They effectively took the assets of the company through the regulatory action. But again, at its core, this is not a breach of contract action. And in order for the government to prevail on the jurisdictional argument, they've got to fit the square peg into the round hole of saying that we have not alleged a takings action. Again, the ultimate determination— Let me put it in the land category where takings are more familiar. You and I enter into a contract to buy a piece of land. You agree in purchasing the land that we need a highway. And so you take the burden on of going to the government and asking for the highway. The government says we're not going to do that. Did they somehow take our transaction, or did our transaction fail because we didn't meet a condition under, in this case, assignments of those contracts? Under your hypothetical, I assume that the contract was conditioned upon regulatory approval, and there is no property right in getting that approval. The property right that I would have is in my property and my ability to sell that property. In this case, the property interest was the insurance policies. Acceptance had previously been encouraged to purchase insurance assets from other failing or less stable insurance companies, creating, in their mind, a reasonable investment-backed expectation that these assets were freely transferable. And they believe that they have the right to transfer these assets when the government said we are not going to approve this transaction. The result was these assets ended up in the hands of Rain and Hail free of charge. They didn't have to pay for them anymore. We believe that in— Oh, no, no, finish your answer. We believe that as a result of the regulatory action— And we're not contesting that the government does not have a right to exercise its authority regulatorily. But there is a point at which the regulation goes too far, such that it triggers a regulatory taking. And we believe that in this case, there has been a regulatory taking of acceptance as property. Two questions. One, what is the—you said that the government can properly—it has it in its power to prevent a sale of assets, correct? Under certain circumstances, yes. What is the basis for that? Is there a regulation that provides that? In this case, there is no specific regulation that gives the administrator of the RMA authority to accept or reject transactions. The administrator of the RMA does have overall authority to regulate the crop insurance industry. And it's under that broad umbrella of authority that the administrator obviously believed he had the authority to accept or reject this transaction as he had other transactions. Where is that authority set forth? Is that in a statute or a regulation? It's in the statute, and it can be found generally at 7 U.S.C. 6933 B.1. Okay. Which is the RMA's authority to supervise the Federal Crop Insurance Corporation. So you're saying—your argument is that under the umbrella of that statute, the administrator of RMA took an action here, an action which was, in your view, not unlawful. Oh, no. We have to concede, as we must under Del Rio, the authority of the underlying governmental action. We do not challenge the legality of the underlying governmental action. That has got to be conceded as the gravamen of any ballot taking. Okay. Now, let me ask you this. What about the government's argument that there was a failure to exhaust administrative remedies here? The government cites to 7 U.S.C. 6912 E—excuse me—in 7 CFR 400.169 and says that you didn't exhaust your administrative remedies by making a claim to the deputy secretary and then presumably going to now, I guess, the government board of contract appeals, then the agriculture board. What is your answer to that? For the same reasons that the jurisdictional statute does not apply because this was not a case filed by or against the corporation, which is the condition perceived to exercising the jurisdiction under the Federal Crop Insurance Act. But if it should have been filed against the corporation, that wouldn't make a difference, would it? I'm sorry. I didn't hear your question. In other words, isn't the question here what is the true nature of the claim? Everyone would agree with that. Which is the holding of Texas PFR. Right. And you're correct. And isn't the real answer to the government's administrative failure to exhaust argument, don't we have to decide whether there was a claim that should have been filed against the administrator and then pursued to the board of contract appeals? Yes. Why do you say it couldn't have gone that route? Because section 6912B isn't applicable on its face because it says that the exhaustion, the requirement to exhaust kicks in when a case has been filed against the secretary, the department, or an agency, office, officer, or employee of the department. We did not sue the secretary of the department. Oh, I know you didn't, but is the question should you have? No, because we have asserted properly a Fifth Amendment takings case as this court held. All right. So that's your answer. The one final question. Do you regard, it seems to me, and you may disagree, and I'm going to ask the government the same answer, the record here is a little fuzzy. We don't, the parties didn't provide us with a copy of the contract, the SRA. The government says this is a contract action. We don't have a contract. There's a dispute as to exactly what happened when permission was sought for this transfer. Is the record, at least as far as we're concerned, cohate enough for us to decide whether in fact this really is a true takings claim? Yes, Your Honor, I believe it is, and I believe it is for the following reason. The question as to whether or not there is a taking is a question that's ultimately left to the determination of the trial court. The question for this tribunal is which trial court should that be to delve into the facts? No, no, no. The question is, assuming there was a takings claim here and it gets treated as such, you may win or you may lose. The question is, have you properly asserted a takings claim? If you have, then it should be in the Court of Federal Claims. If you haven't, then it's properly in the district court. The question here isn't whether you win or lose on your takings claim. Have you properly asserted one? We believe that we have and that the complaint makes out a prima facie case for a takings claim. As this Court noted again in Texas Peanut Farmers, you have to look at the jurisdictional requirements under the Tucker Act. Have we properly named the United States as a party? The Tucker Act, as we know, does not create jurisdiction. Where does the jurisdiction get created? We have filed a claim alleging a breach of the Fifth Amendment takings rights of our client. We're seeking damages that do not sound in tort. That claim is properly filed with the Court of Federal Claims. We have not. In order to find merit in the government's argument, this tribunal would have to find that the words in 1506d that says all suits by or against the corporation really means all suits involving the FCIC in any way. No, I think to rule for the government, we'd have to decide that this is not, in fact, a takings claim. We believe that we have established a prima facie takings claim based upon the allegations in the complaint that the acceptance insurance company had a cognizable property right, that it was not allowed to transfer, and as a consequence of the government's regulatory action, those assets were worth value. We think we have the essential elements of a Lucas-type claim, and absent a Lucas claim, that we can satisfy the three-part criteria under Penn Central. Thank you, Mr. Wiener. Would you like to reserve the remainder of your time?  We'll give Mr. Wiener an additional two minutes. So could you give Mr. O'Connell 17 minutes, should he need to use them? That'll make things about even. Mr. O'Connell? I'd like to respond to a few things that I just heard. There was a lot of discussion about a takings claim, but it's the government's position that it doesn't matter whether it's a takings claim or a contract claim or any other kind of claim because of two things, the language of 1506d, which says that exclusive original jurisdiction of all suits against the Federal Crop Insurance Corporation. Is there a suit against the FCIC here? It's not in Maine, but that's what it is. They didn't call you out, at least, when they sued you. So how do we know whether it's against you or against the United States? Well, you can look at the complaint, which complains of actions of the Federal Crop Insurance Corporation and the RMA. That's the first place to look. If it is a taking, would the action lie against the United States and therefore be in the Court of Federal Claims? The action would not be in the Court of Federal Claims, and whether in the district court the action would be against the United States, I would say no. By name, it can continue against the United States, but at issue is the actions of the agencies involved. We know the actions of the agency. The question is, who is being sued? Is the United States being sued for taking property for public purposes, or is the corporation being sued when it isn't, on the papers at least, purportedly being sued? How would you advise this Court to make that decision? I would advise the Court that it doesn't matter because the complaint itself complains of the actions of the agency, so it doesn't matter whether they say, well, we're complaining of the actions of the agency, but we're going to name the United States as the defendant so we can choose our forum. Well, Mr. Connell, let me ask you this. In your brief at pages, well, it looks to me like if you look at the decision, the two key decisions here seem to be, number one, the district court decision, and most importantly, I think, the Court of Federal Claims decision, the transfer to the district court. And if you look at A31, which is the Wheeler decision, that's the Court of Federal Claims, and if you look at A7, that's the district court decision. Those decisions both seem to assume that this is a takings claim because they never say it's not a takings claim. They seem to suggest it is by this phrase, you know, if you just plug the word takings in place of contract. Do you agree? Yes. So, number one, we agree that both courts seem to assume this was a takings claim, correct? Yes. Okay, now, if you look at your brief, you say at page 13 that there's no breach of contract claim here, correct? That's right. And you seem to say at pages 1, 9, and 20 that they're asserting a takings claim, correct? You say at page 9? Yes. Okay. So, it looks to me like the government is saying that a takings claim is being asserted here, am I correct? That's what they've attempted to plead. We would disagree that… Well, you say though that they are asserting a claim. You say that at page 1 of your brief, but you say they are asserting a takings claim, and you say the same thing at page 9. They are asserting a takings claim, okay? Yes. So, let's assume, is it your position that if there is a bona fide takings claim here, okay, that that claim is not properly in the court of federal claims? Assume we have a bona… I agree, it seems to me that if in fact there's a disguise taking claim, in other words, if there's really a claim that's a contract claim, then they're out of luck. They've got to be in the district court, no question about it. But, let's assume for the moment that it is indeed a bona fide takings claim for an amount in excess of $10,000. Is it your position, the government's position, that that should be in the district court as opposed to the court of federal claims? Yes. Why? Because that's taking a pretty big step. Because of the all suits language in 1506d. But again, though, there are cases that say that a takings claim is not a suit against a government… you know, typically, you see takings claims all the time, right, in the court of federal claims? Yes. And they arise from the actions of various government agencies, right? Whether it's HUD or DOE or whatever. The claim, a constitutional claim, there are cases that say that a constitutional claim is brought against the United States in its sovereign capacity. And, you know, you look at the legislative history, I don't think, it doesn't seem to me, could be wrong, that the legislative history supports the proposition that Congress intended to take away from the jurisdiction of the court of claims coverage over a true, underlined true, bona fide, underlined bona fide takings claim. And I would think the government would want a bona fide takings claim, bona fide, to be in the court of federal claims, because that's the whole purpose of the court of federal claims, to defend suits against the government in its sovereign capacity, with exceptions, you know, that we recognize, for a takings claim. I would think it's in the government's interest. I think it may be legally correct to be in the court of federal claims, and that's where, from the standpoint of the government, to have that be the one court that decides, in this case, where it should be. Well, first of all, we don't have a preference, per se, because we're not trying to forum shop here. No, you're not, but maybe that's where it should be. I'm not saying you have a preference, but I'm saying Congress set up a statute where the government decides claims of the Constitution against the government in excess of $10,000, and this is certainly, you've set a takings claim, and isn't that, for that reason, that's where it should be. Well, the Tucker Act would be a general statute that addresses this issue, but it's our position that 1506D is a more specific statute. But that talks about suits against the FCIC. A takings claim isn't a suit against the FCIC. A takings claim is brought against the United States in its sovereign capacity, and if Congress had said that they wanted that regime changed, wouldn't they have done that? By use of the word all suits, there's no other interpretation that we can give to it. All suits against who? The Federal Crop Insurance Corporation. And right, that is an entity different. That's a government agency. It's not the United States in its sovereign capacity, and that's what takings claims are. By or against is the language. They didn't bring any suit. You didn't bring the suit, and there's no suit against the FCIC if there's a taking, right? No, there's still a suit against the FCIC because the court looks to the true nature of the action, and the true nature of the action is the complaining of the action. Mr. Judge, Judge Shaw went through that, I think, didn't he? You've agreed this is a takings claim. Well, I'm agreeing for the purpose of your question. I'm certainly not agreeing that it's a takings claim. But no, but the government says in its brief they're asserting a takings claim. Yes, certainly. And that's, I mean, now, if in fact it is a takings claim, and it goes to trial, they may win, they may lose. They may lose on summary judgment. They may lose after trial. But it appears that a takings claim has been asserted here. Certainly they're pleading a takings claim, Your Honor. But in our review of the cases, and we've cited several takings cases that have been brought in district courts and not naming the United States as a defendant. In Supreme Court cases, we're not aware of a rule that somehow makes the takings case distinct from the contract case where it's only the actions of the United States that's at issue rather than the actions of the agency. But with all the takings claims that are brought in the Court of Federal Claims, even, you know, the takings claims are always brought against the United States in its sovereign capacity, not against the agency. An agency is a name. But let me ask you this. Mr. Weiner says that we have enough on this record to decide this case. He says we can rule, he would say we can rule that the transfer was proper or improper based on the record we have before us. Do you think that's the case? Because the parties didn't provide us with very much here. We didn't get a copy of the standard reinsurance agreement. There's a conflict as to what exactly happened. And there is authority for the proposition that a case can be sent back for determination as to the true nature of the claim. Well, if the Court's determination is going to turn on the issue of whether or not this is truly a takings claim or whether it's a contract claim, I would say absolutely the Court does not have enough information. The record that was considered by the Court of Federal Claims principally on the cross motions by the parties was extensive as the Court itself says in the opinion. And our version of the facts is much different than the Court. And just briefly, what we would say the facts are is that there's a standard reinsurance agreement. And that standard reinsurance agreement provides certain provisions by which policies can be transferred from one company to another. After this non-binding letter of intent was signed, Rain and Hail, the company that they were attempting to assign the policies to, came to the RMA and FCIC and said, Will you waive provisions of that standard contract? The agency said, No, we will not unless you do certain things. Rain and Hail said, Well, we're not interested in doing those things. Therefore, we choose not to consummate or continue forward with the transaction outlined in the non-binding letter of intent. So it is a fact-intensive inquiry. And so the answer is no. What do you need to review beside the complaint? To characterize it as a contract or a takings claim? In other words, it doesn't matter what court makes the decision, apparently to the government, whether it's the Court of Claims or the District Court. Either court, to make that threshold finding or conclusion, only needs to look at the complaint to determine if it's a proper party, the United States, and if the plaintiff has properly alleged construing the complaint most favorably to the plaintiff, whether taking claims alleged. Why would you get into the contracts on that threshold question? Well, because it's jurisdictional, I think the court would have to look beyond the four corners of the complaint in order to determine which court properly had jurisdiction. And that would involve reviewing the contract. Well, then, taking up on Judge Shaw, isn't it more appropriate that a plaintiff who alleges a taking, a regulatory taking against the United States, have that decision made both on behalf of the plaintiff and on behalf of the government, which has waived its sovereign immunity, in the Court of Claims? Why would you want the District Court to be playing around with the Tucker Act and takings? Well, we don't want the District Court to be playing around with the Tucker Act. It's our position that when Congress enacted 1506D, it preempted or it removed Tucker Act jurisdiction of lawsuits of this type. So, Carl, let me ask you, if it's correct that a takings claim, and just assume the hypothetical, if it's correct that a takings claim is a claim brought against the United States in its sovereign capacity, should this case not be in the Court of Federal Claims? I think that would probably be correct, Your Honor, yes. Anything further, Mr. O'Connell? No, Your Honor, I'm just asking for a further argument. Your argument is that this is just, you're enforcing the contract? Yes. It's a question of whether the contract is properly enforced. Yes. Thank you, Mr. O'Connell. Mr. Weiner, you have two minutes. Thank you, I'll be very brief. And if I understood correctly, the government's argument is that even if this is a taking, the case still belongs in District Court because of the all-suits language in 1506D. We disagree, I disagree stridently. The all-suits language of 1506D is conditioned expressly on there being a suit by or against the corporation. We have not filed a suit, properly have not filed a suit by or against the corporation, unlike Texas Peanut Farmers, where there was some artifice, some clever pleading, trying to get around it. Without the contract, how do we know if this is just, in the record, we don't have that. How do we know if this is just a contract enforcement action or a taking? Well, I might think the record is complete, but the last time I looked, I don't get a vote. I believe that the allegations of the complaint on their face establish a bona fide takings claim, or at least a prima facie takings claim, and it ultimately would be left to the trier of fact to determine the propriety of that claim. The government is asserting that this is a case that is properly in the form, or should be in the form, of breach of contract. Who should decide if this is a taking or a contract? I believe... I don't know. If this court doesn't have enough information to make that on its own, should that be made by the district court or the court of federal claims? I think that the decision should be made by the court of federal claims. Why? Because there has not been a claim asserted against the corporation, and I think that under the rules of pleading, the allegations in the complaint must be accepted as true. It's the government's burden to show that this is, in fact, a breach of contract claim. The government does not carry this burden, and I think that ultimately that determination should be left to the court of federal claims with a rebuttable presumption that if it can be shown that, in fact, this is a claim that rests properly in contract, at that point then the case can be transferred to the appropriate federal district court, which the court of federal claims has defined. Of course, this one's already bounced a couple times, hasn't it? Well, you know, yes. But what's the remedy then? We've got to get it right, and ultimately what we're trying to avoid is trying the case in Nebraska, going up to the Eighth Circuit, asking the Eighth Circuit to say what this court may have meant by Texas peanut farmers, and potentially then have the case then transferred back to the court of federal claims because that court determines it didn't have jurisdiction. Thank you, Mr. Weiner. Thank you. All rise. The honorable court is adjourned. Judge Bromley at 1080. Thank you.